## NATIONAL LIFE & ACCIDENT INS. CO. v. HOLLOWAY.

### No. 8741.

Court of Civil Appeals of Texas. San Antonio.

Feb. 17, 1932.

Rehearing Granted March 16, 1932.

Further Rehearing Overruled April 13, 1932.

G. Woodson Morris, of San Antonio, for appellant.

Augustus McCloskey, of San Antonio, for appellee.

SMITH, J.

■ This is another appeal from a judgment of recovery upon an industrial life insurance policy. The amount of the policy was $310, of the premium 25 cents a week. No medical examination was required by the company, but the policy contained the usual stipulation that it should not be operative unless at the time of its issuance the insured was alive and in good health. Such stipulations are universally held to be reasonable, and in accord with a sound public policy.

The insured applied for the policy upon May 30, 1930. The first two weekly premiums were paid by appellant's local soliciting agent, the policy was issued on June 16, and forwarded to said agent for delivery. When the agent tendered it to the prospective insured, she said she did not want the insurance but the agent left the policy with her, nevertheless.

The insured paid the succeeding premiums up to June 30, but paid none during the next four weeks, whereby, under its terms, the policy lapsed and became void, and was canceled on the books of the company on July 28.

It was provided in the policy, however, that such lapsed policy could be reinstated upon the payment of delinquent premiums and the

presentation of satisfactory evidence that the insured was in sound health.

On August 7 the insured's husband, appellee herein, left $5 at a certain drug store, together with the policy and receipt book, for the purpose of having the policy reinstated, and telephoned appellant's district manager to have the local agent call for same. In response to this call the local agent went to the drug store, got the money and papers, went to the insured's home, took her application for reinstatement, and delivered it with the policy to the district manager, who in turn forwarded them to appellant's home office at Nashville, Tenn., there to be acted upon. This process, and the issuance and delivery of reinstatement papers, usually occupied about three weeks' time, as it did in this case. The papers mentioned, together with a certificate of revival, effective August 25, were received from the home office by appellant's district manager on August 22, and on the following day, August 23, were left at the drug store to be called for by the insured.

But in the meantime, on August 21, the insured died.

The revival certificate, as did the original policy, contained a stipulation that it should be void "unless the insured is alive and in sound health at" its date—which was August 25. The stipulation, as before stated, is a reasonable one, was plainly set forth in the contract, is universally upheld by the courts, and of course must prevail in this case, since the insured was not alive on its effective date, or when it was attempted to be delivered. The question of estoppel is not in the case.

The trial court rendered judgment for the amount of the policy, with penalty and attorney's fees, upon the single finding of the jury that the insured was in sound health on August 7, the date of the insured's application for reinstatement. But that issue was quite beside the controlling question, which was, under the plain provisions of the certificate of reinstatement: Was the insured alive and in good health at the date of that certificate? The evidence is undisputed that the insured died after the policy lapsed and before it was reinstated, and according to its terms it was void and no recovery could be had thereon.

The judgment is reversed, and judgment will be here rendered that appellant go hence with its costs.

## On Motion for Rehearing.

█ It was stipulated in the policy in question that a failure to pay premiums for a period of four weeks rendered the policy void, but that in such case the policy "may be revived, if not more than 52 premiums are due, upon payment of all arrears, and the presentation of evidence satisfactory to the Company of the sound health of the insured."

The record shows that all delinquent premiums were paid appellant's local agent on August 7, and at the same time the insured made formal application for revival of the policy, which had been marked canceled on the books of the company. The record shows, further, that the company approved this application, thereby evidencing its satisfaction with the evidence presented to it as to the sound health of the insured. The date of this approval is not clearly shown. It certainly occurred prior to the date of the revival certificate, August 25, for that certificate, so dated, was received in San Antonio at least three days prior to its date. The certificate was originally given the date of August 13, but for some reason not disclosed a pencil line was run through that date, and the later date, August 25, was written under the former. The whole record warrants the assumption that the application for reinstatement was approved prior to the death of the insured. By the terms of the policy this act of approval, evidencing the insurer's satisfaction with the evidence presented of the insured's sound health, had the effect of automatically reinstating the policy. We have reached the conclusion that this reinstatement could not be defeated or suspended by the simple device, resorted to by the insurer, of postdating the revival slip by which the reinstatement was formally acknowledged. In short, by the terms of the policy, the insured was given the privilege of reviving the lapsed policy by the simple process of paying delinquent premiums and furnishing evidence satisfactory to the insurer of the applicant's sound health. This privilege was unrestricted except by those two conditions. By complying with those two conditions the insured's privilege became his absolute right. The delinquent premiums were paid over to appellant's collector, although his acceptance thereof could not bind the company until its responsible officers approved the accompanying application for reinstatement. In any event, the delinquent premiums were paid over to the company, the application for reinstatement was made and accepted, while the insured was yet alive, and, according to the jury finding, in sound health. We conclude from these facts that the insurer was liable upon its contract, and that it could not avoid that liability by postdating the certificate of reinstatement. There was no provision in the policy for the issuance of such certificate. There was no stipulation in the policy that the reinstatement should not become effective upon approval of the application therefor, or until a date provided therefor in the certificate, or that it should depend for any purpose upon such certificate. There was in fact no provision in the policy for the issuance of such certificate, and the policy was revitalized just as effectively without, as with, the issuance of such certificate, which could be given no more effect than a mere receipt for the deferred premiums and accom-

panying application for reinstatement. Certainly the insurer could not modify or enlarge upon the terms of the original contract by any stipulations inserted in the certificate.

It was provided in the original contract that the policy, once lapsed because of nonpayment of premiums, would be "revived upon payment of all arrears and the presentation of evidence satisfactory to the company of the sound health of the insured." The provision for revival was not made dependent upon the terms, conditions, or date of a renewal or revival certificate. It was made dependent solely upon the performance of the two conditions specifically designated. And the company could not thereafter enlarge upon its contractual rights by imposing the further condition that the reinstatement should not become effective upon the conditions named in the contract but should continue thereafter in suspense indefinitely to await a date to be designated at the caprice of the higher officers of the corporate insurer. This court will not lend its aid to such a subterfuge by which insurers may, if they please, play fast and loose with their subscribers, and dangle revival slips in suspense, and postdate them, as was done here, beyond the zone of liability. The fact is that the revival slip in question was first dated August 13 (while the insured was alive) and afterwards postdated to August 25 (after the insured was dead). It was certainly postdated by design, for it was issued in Nashville, Tenn., at an undisclosed date, and was delivered to the insured's agent by the insurer's local agent in San Antonio on August 23, two days ahead of the juggled date of its issuance, and two days after the death of the insured.

Appellee's motion for rehearing is granted, the order of reversal set aside, and the judgment affirmed.